## GILLESPIE *a.* TORRANCE.

*New York Superior. Court; General Term, December,* 1858.

DEFENCE.—BREACH OF WARRANTY.—EXCEPTION.

An accommodation indorser, who, without consideration, becomes by indorsement
a surety for the payment of the price of goods sold to the maker of the note,
cannot set up as a defence or counter-claim that the goods were warranted to
the vendee, and that the warranty was broken.

The damages sustained by the maker by reason of the breach are a cause of ac-
tion in him alone, and the indorser cannot avail himself of it.

Of the distinction between a defect in the quality and in the quantity of goods
sold with a warranty.

On exception to a ruling, the ruling must be sustained, if in point of law it was
right, whether the appellate tribunal concurs in the reasons given therefor
or not.

*It seems* that it might be otherwise on an application for a new trial, where the
true ground of the inadmissibility of material evidence is, an objection which,
if it had been suggested, might have been obviated, and its rejection was placed
so distinctly upon another and erroneous ground as to mislead the party.

Appeal from a judgment.

This action was brought against the defendant as indorser of
a promissory note, dated December 15, 1855, made by J. J.
Van Pelt, for $1808$\frac{90}{100}$, payable five months after date, to
the order of the defendant, and by him indorsed to the plaintiffs.

The defence was: That the note was given at the city of New
York to the plaintiffs, by the maker Van Pelt, in part payment
for a raft of oak and pine timber, then afloat in the North
River, on the shore at Hoboken, N. J., and was indorsed by
the defendant as surety for Van Pelt, for the purpose of secur-
ing payment of the price of the timber to the plaintiffs, and for
no other consideration :

That at the time of the sale, the plaintiffs exhibited to Van
Pelt certificates of the inspection and measurement of a quantity
of oak and pine timber, which stated the number of sticks in-
spected, and the measurement and descriptions thereof, and
stated that there were in the timber so inspected 30,418 feet of

first quality oak, 5618 feet of refuse oak, 1240 feet of first quality pine, and 85 feet of refuse pine : that the plaintiffs then represented that those certificates were the certificates of the inspection of the raft of timber then offered for sale, and contained a correct statement thereof (with the exception of 21 sticks mentioned in the certificates, which were lost) :

That it was, at that time, the usage in the city of New York, among dealers in timber, to purchase and sell timber on the faith of similar inspection certificates; and by such usage, the seller of the timber is and was deemed to warrant that the timber sold should correspond with such inspection certificates in respect to the quantity, quality, description, and classification of the timber ; and that in case of any variance between the inspection certificates and the timber delivered, the seller should be bound to make good to the purchaser the damage which he might sustain by reason of such variance : that Van Pelt and the plaintiffs were both dealers in timber in said city, and had notice of such usage, and dealt in reference thereto in the sale and purchase of this raft of timber :

That Van Pelt, relying on these representations of the plaintiffs, and on the inspection certificates, and upon this usage, purchased the raft of timber at certain rates per foot for each description of timber; and for the purpose of ascertaining the quantity and different classes and descriptions of timber contained in the raft, reference was had to the inspection certificates, and the amount to be paid was computed according to such certificates :

That the terms "first quality oak" and "refuse oak" were and are well known in the timber trade, and denoted different descriptions of timber customarily bought and sold in the New York market and elsewhere by those designations :

That the price of the said timber so computed amounted to $9043\frac{80}{100}$ : that Van Pelt had paid on account thereof $7235\frac{18}{100}$, leaving unpaid not exceeding $1808\frac{80}{100}$, the amount of the note in suit :

That the raft of timber was after such purchase delivered to Van Pelt, and he discovered after such delivery, and the defendant alleged the fact to be, that the inspection certificates did not contain the true measurement of the different descriptions of timber, but were erroneous in the following particulars :

that, in lieu of 29,441 feet of first quality oak, there were not in the raft over 14,720 feet thereof; and, in lieu of there being in the raft 5523 feet of refuse oak, there were therein about 20,243 feet thereof:

That, had the price of said timber been correctly computed, the same would not have amounted to over $4995$\frac{35}{100}$.

Wherefore the defendant alleged that the plaintiffs had been already overpaid for the timber so sold and delivered; that there was nothing due to the plaintiffs on the promissory note in suit; and that the plaintiffs had given no consideration therefor.

The action came on for trial on the 3d day of May, 1858, before Mr. Justice Slosson and a jury.

The defendants put in evidence a bill in the words and figures following:

"NEW YORK, 12th December, 1855.

Messrs. J. J. VAN PELT and DAN'L TORRANCE,

To GILLESPIE, DEAN & Co.

For raft of timber at Brown's Basin, Hoboken, 29,441
feet first quality oak, at 27½c.. . . . . . . . . $8,096.27
5523 feet second quality oak, at 13¾c. . . . . . 759.41
1325 feet pine, at 12½c. . . . . . . . . . . . . 165.62

9,021.30
½ inspection at 5 p. c. for M.. . . . . . . . . . 22.68

$9,053.98
[*Duplicate.*]

"Payable by J. J. Van Pelt's note, indorsed by Daniel Torrance, at 3, 3½, 4, 4½, and 5 mo's.

Receiv'd payment as annexed,

GILLESPIE, DEAN & Co.

Per N. G. M. CLIBBORN."

The note in suit was admitted by the plaintiffs' counsel to be one of the notes given in payment of this bill; and it was also admitted that the other notes given therefor had been duly paid.

Books admitted by the plaintiffs' counsel "to be the books delivered with the said bill of timber, as containing the specifi-

cation of the contents of the raft," were also put in evidence by the defendant.

They were arranged in columns of figures, and at the end of each book was a summary or certificate in the following form :

"West Troy, July 13, 1855.

| | | |
|---|---|---|
| 122 sticks first quality oak . . . . . . . . . . . | 7153 | ft. |
| 26 " refuse " . . . . . . . . . . | 1820 | " |
| 1 " first quality pine . . . . . . . . . . | 59 | " |

· 149                                              9032 ft.

Charges, $11.28.

HENRY H. SMITH, Inspector."

The total of first quality oak mentioned in the three was 29,441 feet.

The defendant then proved the mode of marking timber on inspection, and that the timber in question was marked upon that plan: that the "first instalment of this raft, being about one third of the whole, was brought over to Van Pelt's yard about February, 1856, and the sawing of it was then commenced."

The defendants' counsel then put to the witness the following question : "How did the sticks marked as first quality turn out?"

The question was objected to on the ground that no warranty of quality had been proved ; and that no express warranty was alleged in the answer, but only "a warranty by usage."

The defendants' counsel asked leave to amend the answer by averring an express warranty.

The court denied the motion to amend, on the ground that the papers given in evidence were not any evidence of an express warranty ; and also sustained the objection to the question put to the witness. The defendants' counsel excepted to each of these rulings.

The defendants' counsel then inquired of the witness: "How did the sticks compare, as to quality of first or second class, with the specifications in the memorandum books now produced, containing inspector's certificates, &c., as to what were the qualities of the timber?"

This question being also objected to, the objection was sustained, and the defendants' counsel excepted.

" The defendants' counsel thereupon offered to prove that the timber fell short of first quality 14,000 feet, and that the difference in value was, at $13\frac{3}{4}$ cts. a foot, more than the amount of the note :"

" Also, to prove that the inspector's books are, by usage as pleaded in the answer, delivered as evidence of quality and quantity; and that the seller is, by usage, deemed to warrant that they correspond :"

" And that the timber was in a raft, so that the logs could not be turned over without taking the raft to pieces."

On the plaintiffs' objection the court excluded the evidence, and overruled each offer; and to each ruling the defendants excepted.

The jury, under the direction of the court, found a verdict for the plaintiffs for the amount of the note with interest.

From the judgment entered on the verdict, the defendants appealed to the general term.

*C. A. Rapallo*, for the appellant.

*William Stanley*, for the respondent.

By the Court.—Woodruff, J.—There is no dispute upon the question, whether the plaintiff was entitled to recover upon the note in suit, unless the defendant established a defence. If, therefore, there was no error committed in excluding the evidence offered by the defendant, it was clearly proper to direct the jury to find a verdict for the plaintiff for the amount of the note, with interest from the maturity thereof.

The evidence on the part of the defendant, so far as it was received, established the fact of the sale of the timber mentioned in the answer—the delivery thereof to Van Pelt—that it was paid for by notes made by J. J. Van Pelt and indorsed by the defendant, of which the note in suit was one, and the others are paid—that memorandum books, containing an inspector's certificate of the quantity and quality of the timber, were delivered with the bill of the timber—and that the timber, when purchased, was bound together in a raft and lying afloat in the North River, at or near Hoboken, in Brown's Basin.

The rulings of the court to which exceptions were taken will be considered quite as favorably for the defendant as he can ask, if we treat them as they would be treated if the amendment of the answer, which the defendant moved for, had been allowed by inserting therein an allegation of an express warranty of the timber. There is some show of reason, at least, in so considering them, because the court refused the amendment on the ground that the evidence already given by the defendant was not any evidence of an express warranty. And the evidence which was thereafter rejected was offered, first, to show that, by the usage of the trade on a sale of timber, the inspector's book and certificate are delivered as evidence of quantity and quality, and the seller is deemed to warrant that the timber sold corresponds therewith; and, second, that the warranty was broken in this— that a portion of the timber, which on the sale in question was described in the bill of parcels, and in the inspection books and certificates, as "first-quality oak," was in fact ascertained, after the delivery thereof, to be second quality, or "refuse" oak.

. It will, however, be seen, that the reasons hereinafter assigned fully sustain the ruling of the court in denying the leave to amend, whether the specific reason then given for such denial was sufficient or not.

Two questions, therefore, and, we think, only two questions, are raised by the exceptions taken at the trial:

*First.* Can an accommodation indorser, who, without consideration, becomes by indorsement a surety for the payment of the price of goods sold to the maker of a note, allege and prove as a defence, or by way of counter-claim, that the goods were warranted to the vendee, and that the warranty was broken, and, by proving the damages sustained by the vendee, abate from or extinguish the plaintiff's (the vendor's) claim against him upon his indorsement?

*Second.* Was the evidence which the court rejected competent to prove—or, if in its nature competent, would it have tended to prove—any warranty of the quality of the timber by the plaintiffs, on the sale of the timber to Van Pelt, to whom, as alleged in the answer, the sale was made, and for whose accommodation the defendant became indorser, as surety that he should pay the price?

1. The first of these questions is not an open question in this.

court. In La Farge *a.* Halsey (1 *Bosworth's R.*, 171; S. C., 4 *Abbotts' Pr. R.*, 397), this court, in general term, held, that in an action against sureties for the payment, by the tenant, of the rent reserved in a lease, the sureties could not set up, as a counter-claim, damages sustained by the tenant, by reason of a' breach by the landlord of an agreement made by him with such tenant—although the tenant, if sued for the rent, might have made such counter-claim.

In the present case, if a warranty of the quality of the timber was given to Van Pelt, and it was broken, there is in him a cause of action against the plaintiff: but even Van Pelt, if he used that claim as a defence to the note, would use it upon the principles governing the doctrine of recoupment; he would not be bound to set it up as a defence to the note—he might bring his own separate action for his damages.

If Van Pelt either brought his action, and now, under the Code, if he set up the claim as a counter-claim to the note, he might recover the whole damages sustained by him.

The defendant here has no control of that cause of action. Van Pelt may enforce it, or may assign it, or may release it. He may not choose to permit the defendant to have the benefit of it. The defendant could not, under any view of the subject, make it available to effect more than an extinguishment of the plaintiff's claim. He is not at liberty to so limit the rights of the vendee, and possibly preclude his obtaining full compensation for his damages; for obviously the plaintiff cannot be required to litigate the matter twice. The establishment of this cause of action by the present defendant, and its allowance in his favor, would not preclude an action by Van Pelt for his damages; and nothing done or proved in this action by this defendant could be permitted to defeat his recovery.

These considerations all show that an indorser, in virtue of his relation to the parties as surety for the maker, cannot protect himself by any such counter-claim.

And the definition of a counter-claim in the Code is further conclusive on the same point:—A counter-claim is another cause of action existing *in favor of the defendant*, as well as against the plaintiff (§ 150). This is not such a claim.

Whether circumstances might not be suggested which would create such equitable rights in the indorser, in case of the insol-

vency of the maker, as would entitle him to protection, we do not now inquire—none such appear in this case.

The defendant's answer places his defence upon the ground of a sale and delivery to Van Pelt—his own indorsement, without consideration, received by himself, and as surety for Van Pelt. The defendant is not in a condition to set up a distinct cause of action—a breach of warranty on such a sale, whether the warranty be expressed in words, or otherwise inferrible from all the circumstances—as a counter-claim, nor as a defence to the action.

It was ingeniously urged on the argument, that insomuch as, by reason of the inferiority of some of the timber sold, such portion thereof was reduced to what is called second-quality oak, or refuse oak, the defendant was at liberty to treat the case as a deficiency in *quantity*. And so he insists that there was a partial failure of the consideration of the sale, resulting in an over-payment by the vendee, Van Pelt, which leaves the note now in suit without any subsisting consideration; which view of the subject, if correct, would show, not a set-off or counter-claim, but a defence to the note itself, which will avail as well for the benefit of an accommodation indorser as for the benefit of the maker.

The plausibility which gives color to the argument arises from the casual coincidence that there were two qualities of oak sold, and not from any soundness in the view suggested. Had the sale described the oak as being a given number of sticks or feet of " first-quality oak timber," and the whole was delivered and accepted, and it was shown that a part of the timber was of an inferior quality, and yet the whole was retained and used by the purchaser, the defect could never be called a deficiency in *quantity*.

Neither can the defect be so considered with any more accuracy when, besides such a sale, there was at the same time, and as part of the same transaction, a sale of other oak in terms described as second quality, or refuse. The vendee has received the timber he bargained for—the very sticks which were contained in the raft. They may not be so good as was represented, but they are the sticks of timber which, in fact, he purchased.

Where the property is received and retained, a defect in quality cannot be regarded as a failure of consideration. The

maxim *caveat emptor* applies to the quality of the goods sold, unless there is fraud or warranty ; and if there be a warranty, and it be broken, the breach creates a right of action in the vendee,.not a defence (strictly so called) to the note given for the purchase-money. Indeed, the goods and the warranty, taken together, constitute a full consideration for the note, although the quality be of less value than it is warranted to be.

As, for example, on a sale of a horse which is warranted sound, and which is shown to have some defect, not obvious to mere inspection—the consideration of a note given for the purchase-money has not failed : the warranty itself (in so far as the defect impaired the value of the horse) makes up the consideration of the note, and, except upon the principle of recoupment or counter-claim, the vendee is without defence to the note.

It may be, on a sale, such as it is claimed was made in the present case—where the property was out of the State, in a condition not readily accessible, and where the sale was made in reliance upon the accuracy of the certificates of inspection—that the purchaser would have had a right to refuse to accept the timber if, when delivery was offered, it was found not to correspond with the certificates ; but he cannot accept the delivery, retain and use the timber, and, if there be no warranty, refuse to pay the consideration. If there be a warranty, then the breach of it vests in the vendee himself a right of action, which he may use as a counter-claim if he elect so to do, but which is not vested in the surety, and, as already stated, cannot be used by him.

2. The answer to the first question above proposed is sufficient to dispose of the case upon this appeal. The proof offered and rejected was not admissible, because, if a warranty had been proved, it would not have established, nor tended to establish, any defence, nor any counter-claim, in the defendant's favor.

It is, therefore, wholly unnecessary to consider the other question. No determination of that inquiry could affect the result. Whether the evidence was, in its nature, competent proof of a warranty, or whether, if competent, it would have tended to establish a warranty, the proof could be of no service

to the defendant. The warranty would avail him in no manner for his protection.

It would seem, by the case, that the reason assigned at the time for rejecting a portion of the evidence was, that there was not sufficient evidence of a warranty. The grounds upon which the offers to prove a warranty were rejected are not stated. But these considerations are wholly immaterial. On exception to a ruling, the ruling must be sustained, if in point of law it was right, whether the appellate tribunal concur in the reasons given therefor or not. Where the true ground of the inadmissibility of material evidence offered is an objection which, had it been suggested, might have been obviated, and its rejection is placed so distinctly upon another and erroneous ground as to mislead the party offering the proof, that consideration might affect the propriety of granting a new trial, on a motion addressed, as such motions are in some degree, to the discretion of the court.

But this case is before us on appeal from the judgment, and on the exceptions only. If otherwise, no such case is presented as above supposed. The objection to the evidence could not be obviated; and had everything been proved which the defendant offered to prove, the plaintiff would still, as matter of law, have been entitled to a verdict for the amount of the note, and interest.

By this we do not design to intimate an opinion that the ruling was erroneous upon the grounds then stated; it is sufficient to say, that we find an established principle which disposes of the case without further discussion.

The judgment must be affirmed.